# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| JEREMY STORR AND JILL MADDRELL, *on behalf of themselves and others similarly situated*, | CIVIL ACTION NO. |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| ROCKET FARM RESTAURANTS, LLC; and FORD FRY | |
| Defendants. | |

## COMPLAINT

Named Plaintiffs Jeremy Storr and Jill Maddrell, on behalf of themselves and others similarly situated, bring this action against Defendants Rocket Farm Restaurants, LLC and Ford Fry, and allege as follows:

## NATURE OF THE ACTION

1.    In this collective action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Named Plaintiffs allege that Defendants willfully violated the FLSA by failing to pay the minimum wage rate for all hours worked and by failing to pay the required overtime premium rate for all hours worked over 40 per week.

## JURISDICTION AND VENUE

2.      The Court exercises jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because the claims raise questions of federal law.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Atlanta Division of the Northern District of Georgia.

## PARTIES

4.      Defendant Rocket Farm Restaurants, LLC ("Rocket Farm") is a foreign limited liability company licensed to do business in Georgia with its principle office located at 644 Antone Street, Suite 1, Atlanta, Georgia 30318, according to the Georgia Secretary of State.

5.      Rocket Farm may be served with process through its registered agent, Daniel P. VanLoh, 644 Antone Street, Suite 1, Atlanta, Georgia 30318.

6.      Defendant Ford Fry ("Fry") is an owner of Rocket Farm.

7.      Fry is an individual who may be served wherever he may be found.

8.      Named Plaintiffs worked for Defendants within the three years preceding the filing of this action.

9.      Named Plaintiffs consented in writing to join this action pursuant to 29 U.S.C. § 216(b). (*See* Exhibits 1 and 2.)

10.     Other similarly-situated individuals are interested in joining this action.

11.     For example, Opt-in Plaintiff Adrian Lewis also consented to join this lawsuit. (*See* Exhibit 3.)

## FACTUAL ALLEGATIONS SHOWING THAT DEFENDANTS ARE JOINT EMPLOYERS

12.     Defendants own and operate restaurants in and around Atlanta, Georgia.

13.     For example, Defendants own and operate "The Optimist," a restaurant located at 914 Howell Mill Road, Atlanta, Georgia 30318.

14.     The Optimist is a restaurant operated by Defendants for the common business purpose of selling food and drinks to customers.

15.     Within the three years preceding the filing of this Complaint, Defendants employed Named Plaintiff Maddrell as a server at The Optimist.

16.     Within the three years preceding the filing of this Complaint, Defendants employed Named Plaintiff Storr as a bartender at the Optimist.

17.     Defendants employed Plaintiffs who engaged in commerce, the production of goods for commerce, or handled, sold or otherwise worked on goods and materials that were moved in or produced for commerce.

18.     For example, Plaintiffs used Defendants' computer systems manufactured outside the state of Georgia in performing their job duties.

19.    Plaintiffs processed customer credit card transactions using Defendants' computer systems.

20.    Plaintiffs sold food and beverages made from ingredients that traveled in interstate commerce.

21.    Rocket Farm is an "enterprise" as that term is defined by the FLSA.

22.    Rocket Farm engages in interstate commerce or the production of goods for interstate commerce.

23.    Rocket Farm employs two or more individuals who work on goods or materials that have been moved in or produced for interstate commerce.

24.    Rocket Farm's employees use computers that were manufactured outside the state of Georgia.

25.    Rocket Farm's employees process customer credit card transactions when performing their job duties.

26.    Rocket Farm's employees use the internet to communicate across state lines while performing their job duties.

27.    Rocket Farm orders and receives at its restaurants shipments of food and beverage products that travel across state lines and are then used by its employees in performing their job duties.

28.    Rocket Farm's gross annual sales or business done exceeds $500,000.

29.    Rocket Farm employed Plaintiffs.

30.    For example, Rocket Farm had the authority to determine the compensation practices applicable to Plaintiffs.

31.    Rocket Farm had the authority to make changes to the compensation practices applicable to Plaintiffs.

32.    Rocket Farms had the authority to determine the employment policies applicable to Plaintiffs.

33.    Rocket Farms had the authority to make changes to the employment polices applicable to Plaintiffs.

34.    Rocket Farm had the authority to hire and fire Plaintiffs.

35.    Fry also employed Plaintiffs.

36.    Fry is an "employer" as that term is defined under the FLSA, 29 U.S.C. § 203(d).

37.    Fry exercises operational control over Defendants' restaurants, including The Optimist.

38.    For example, Fry determines the compensation practices applicable to Defendants' employees, including Plaintiffs.

39.    Fry has the authority to make changes to the compensation practices applicable to Defendants' employees, including Plaintiffs.

40.    Fry has the authority to hire and fire Defendants' employees, including Plaintiffs.

41.    Fry determined the employment policies applicable to Defendants' employees, including Plaintiffs.

42.    Defendants Fry and Rocket Farm jointly employed Plaintiffs within the meaning of the FLSA.

## FACTUAL ALLEGATIONS CONCERNING
## PLAINTIFFS' COMPENSATION

43.    Defendants have operated restaurants in metropolitan Atlanta for nearly 10 years.

44.    Defendants employed Named Plaintiff Maddrell as a server at The Optimist.

45.    Defendants employed Named Plaintiff Storr as a bartender at The Optimist.

46.    Defendants employed Opt-in Plaintiff Lewis as a server at the Optimist.

47.    Customers of The Optimist regularly leave discretionary gratuities ("tips") for the benefit of certain employees, such as servers and bartenders.

48.    The tips left by customers at The Optimist are the property of the employees who customarily and regularly receive the tips (or tipped employees), such as servers and bartenders.

49.     Defendants take a credit against their minimum wage obligation with respect to servers and bartenders, who receive less than $7.25 per hour in direct wages.

50.     For example, Defendants paid Maddrell $2.13 per hour for certain hours worked as a server.

51.     Defendants paid Lewis $2.13 per hour for certain hours worked as a server.

52.     Defendants paid Storr $5.15 per hour for certain hours worked as a bartender.

53.     However, Defendants do not allow servers and bartenders, such as Plaintiffs, to retain all of their tips.

## FACTUAL ALLEGATIONS CONCERNING
## DEFENDANTS' INVALID TIP POOL

54.     Defendants require servers and bartenders to share their tips using a tip pool.

55.     Defendants collect the tips received by servers and bartenders and redistribute a portion of the tips to other employees.

56.     Defendants collect the tips received by servers and bartenders and redistribute a portion of the tips among both tipped and non-tipped employees.

57.     For example, Defendants employ individuals whose primary job duty

consists of polishing Defendants silverware ("Polishers").

58.    Polishers perform their job duties in the "back of the house" away from the Optimist's customers.

59.    Polishers do not interact with customers.

60.    Polishers do not customarily and regularly receive tips from customers.

61.    Defendants require tipped employees, such as servers and bartenders, to share their tips with Polishers.

62.    Polishers receive a share of the tips collected in the tip pool.

63.    Because Defendants require servers and bartenders to share their tips with Polishers, Defendants require tipped employees to share their tips with non-tipped employees.

64.    Defendants purport to distribute tips among employees who are included in the tip pool based on the total sales made by servers and bartenders, not the actual amount of the tips they received from customers.

65.    Defendants do not disclose to their tipped employees the formula used to distribute the tips included in the tip pool.

**FACTUAL ALLEGATIONS CONCERNING UNLAWFUL DEDUCTIONS**

66.    Defendants require servers to pay for the uniforms they wear while working at The Optimist.

67.    Defendants pay servers direct wages of $2.13 per hour.

68.    Defendants deduct the cost of the uniforms directly from server's earnings.

69.    Defendants' practice of deducting the cost of uniforms from servers' earnings results in direct wage rates of less than $2.13 per hour.

70.    Defendants' practice of deducting the cost of uniforms from their servers' earnings results in wage rates of less than $7.25 per hour after the maximum tip credit is applied.

**FACTUAL ALLEGATIONS CONCERNING DEFENDANTS' FAILURE TO PAY OVERTIME PREMIUMS**

71.    During certain workweeks, Defendants' servers work more than 40 hours.

72.    For example, Maddrell worked more than 40 hours during the workweek ending on June 4, 2017.

73.    A copy of Maddrell's earning statement for the workweek ending on June 4, 2017 is attached as Exhibit 4.

74.    However, Defendants fail to pay servers at the required overtime

premium rate for all hours worked over 40 per week.

75.    Defendants unlawfully take a tip credit in excess of $5.12 per hour for hours worked in excess of 40 per week.

76.    Defendants fail to pay servers at least $5.76 per hour in direct wages for all hours worked over 40 per week.

77.    Instead, Defendants pay servers $3.20 per hour in direct wages for hours worked over 40 per week.

78.    For example, Maddrell's earning statement for the workweek ending June 4, 2017 shows a direct wage rate for overtime hours of $3.20 per hour. (*See* Exhibit 4.)

79.    By paying servers $3.20 per hour for hours worked over 40 per week, Defendants fail to pay servers the overtime premium rate required by the FLSA for employers taking the tip credit.

## COUNT 1: WILLFUL FAILURE TO PAY MINIMUM WAGE

80.    Defendants pay servers and bartenders less than $7.25 per hour in direct wages for all hours worked.

81.    Defendants claim a tip credit against their federal minimum wage obligation with respect to servers and bartenders.

82.    However, Defendants cannot validly claim a tip credit against the

federal minimum wage because servers and bartenders are not permitted to retain all of their tips.

83.    Defendants cannot validly claim a tip credit against the federal minimum wage because Defendants deduct the cost of uniforms from their servers' paychecks, resulting in direct wages less than $2.13 per hour.

84.    Defendants cannot validly claim a tip credit against the federal minimum wage because Defendants unlawfully take a credit in excess of $5.12 per hour for all hours servers work in excess of 40 per week.

85.    Defendants fail to compensate servers and bartenders, such as Plaintiffs and those similarly situated, at the required federal minimum wage in violation of their rights under the FLSA.

86.    Defendants' violation of the FLSA's minimum wage provision was willful.

87.    Defendants violated the FLSA with reckless disregard for their obligations under the FLSA.

88.    Defendants failed to inquire as to whether their conduct violated the FLSA.

89.    Because Defendants violated the FLSA, Named Plaintiffs and others similarly situated are entitled to their unpaid minimum wages for all hours worked,

liquidated damages, and attorneys' fees and costs.

## COUNT 2: WILLFUL FAILURE TO PAY OVERTIME PREMIUMS

90.    During certain workweeks, Defendants' servers work more than 40 hours.

91.    Defendants know, or should know, that servers work hours in excess of 40 per week.

92.    However, Defendants fail to pay their servers the legally required amount in direct wages for all overtime hours worked each week.

93.    Defendants take a credit against servers' direct wages that exceeds the tip credit permitted by the FLSA.

94.    Defendants' failure to pay servers at least $5.76 per hour in direct wages for all overtime hours worked per week violates the FLSA.

95.    Defendants' violation of the FLSA's overtime provision, 29 U.S.C. § 207, was willful.

96.    Defendants violated the FLSA's overtime provisions with reckless disregard for servers' rights.

97.    Defendants failed to inquire as to whether their conduct violated the FLSA.

98.    Because Defendants violated the FLSA, servers, such as Named

Plaintiff Maddrell, and others similarly situated, including Opt-in Plaintiff Lewis, are entitled to their unpaid wages for all overtime hours worked, liquidated damages, and attorneys' fees and costs.

## DEMAND FOR JUDGMENT

Plaintiffs respectfully requests that the Court:

(a)    Declare that Defendants' actions, policies, and practices complained of herein violate the rights of Plaintiffs as secured by federal law;

(b)    Enter judgment against Defendants that their violations of the FLSA were willful;

(c)    Award all unpaid wages;

(d)    Award liquidated damages in an amount equal to Plaintiffs' unpaid wages;

(e)    Award reasonable attorneys' fees, costs, and expenses; and

(f)    Award all other relief to which Plaintiffs may be entitled.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury.

Respectfully submitted: November 2, 2017

|  | *s/Dustin L. Crawford* |
|---|---|
| POOLE HUFFMAN LLC | Dustin L. Crawford |
| 315 W. Ponce de Leon Ave, Suite 344 | Ga. Bar No. 758916 |
| Decatur, Georgia 30030 | John L. Mays |
| Phone: 404-373-4008 | Ga. Bar No. 986574 |
| dustin@poolehuffman.com | William S. Cleveland |
| john@poolehuffman.com | Ga. Bar No. 721593 |
| william@poolehuffman.com | Counsel for Plaintiffs |